IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 4, 2003

## STATE OF TENNESSEE v. ABEBREELLIS ZANDUS BOND

**Direct Appeal from the Circuit Court for Carroll County**
**No. 97CR-0139    C. Creed McGinley, Judge**

---

**No. W2002-00943-CCA-R3-CD  - Filed April 16, 2003**

---

The Defendant, Abebreellis Zandus Bond, was convicted by a jury of two sales of cocaine. The trial court subsequently sentenced the Defendant to a nine-year term and an eighteen-year term for these convictions, to be served concurrently in the Department of Correction. The trial court also imposed the two $100,000 fines assessed by the jury. The Defendant now appeals as of right, challenging the sufficiency of the evidence; the admission of certain testimony; the trial court's failure to issue a missing witness instruction; the chain of custody; and the sentences and fines. We modify the Defendant's fines to $25,000 each. In all other respects, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed in Part; Modified**

DAVID H. WELLES, J., delivered the opinion of the court, in which JERRY L. SMITH and NORMA MCGEE OGLE, JJ., joined.

Marcus M. Reaves, Denmark, Tennessee, for the appellant, Abebreellis Zandus Bond.

Paul G. Summers, Attorney General and Reporter; Kim R. Helper, Assistant Attorney General; Robert Radford, District Attorney General; and Eleanor Cahill, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

Camden police officer Dean Floyd was participating in an undercover drug operation under the supervision of Lt. Joe Walker, criminal investigator with the McKenzie police department. Floyd's role was to purchase drugs from suspected drug dealers. Officer Floyd testified that, on October 3, 1996, he went to a house in McKenzie to purchase drugs from Keith Robinson. When Officer Floyd arrived, Robinson was not there, but in the driveway was a white car, beside which a woman was standing. The woman approached Floyd's pick-up and Floyd told her what he wanted. Officer Floyd gave the woman $100, which she conveyed to the driver in the white car. Officer Floyd was then told to go to the white car, and he got into the passenger side of the car. The driver,

a man Officer Floyd knew as "Abe," reached into the glove box and pulled out a small paper sack containing a "large chunk" of what Floyd believed was crack cocaine. Officer Floyd took the substance given him by Abe and returned to his pick-up. He took down the license tag number from the white car and left the scene. He subsequently sealed the "large chunk" in an evidence bag and later turned the evidence bag over to Lt. Walker. Officer Floyd testified that he had "no doubt" that Abe, the driver of the white car, was the Defendant.

Lt. Joe Walker testified that, on October 21, 1996, Officer Floyd turned over to him the substance that Floyd had purchased on October 3, 1996. Walker subsequently turned the substance over to the TBI laboratory on October 23, 1996, where it was determined to be .3 grams of cocaine. Lt. Walker ran the car tag number obtained by Officer Floyd and discovered that the white car was registered to the Defendant's mother.

Steve Lee, the Director of the 24th Judicial District Drug Task Force, testified that he hired Sylvester Island to work as an undercover agent and purchase drugs from suspected drug dealers. Mr. Lee testified that, prior to each proposed buy, he would meet with Mr. Island, search him, and then equip Mr. Island with a body wire. On October 30, 1996, Mr. Lee had such a meeting with Mr. Island in preparation for Mr. Island to approach the Defendant for the purchase of drugs. Mr. Lee gave Mr. Island $100 for the purchase. Mr. Lee subsequently monitored the transaction from a short distance away and later collected the substance which Mr. Island obtained, sealing it in an evidence bag.

Mr. Island testified that, on October 30, 1996, he met the Defendant for the first time. He then called Mr. Lee, and they discussed Mr. Island's approaching the Defendant for a drug purchase. Mr. Island met with Mr. Lee, was searched and wired, and was given $100 to buy "a sixteenth" of crack cocaine from the Defendant. Mr. Island then left and drove to a house where he expected to find the Defendant. A woman answered the door, but Mr. Island refused to deal with her. The Defendant, who was in the house, came out, and the two men then went to a blue car in the carport. The Defendant sat in the driver's seat and pulled out a Crown Royal bag. From this bag, the Defendant pulled out $100 worth of crack cocaine. Mr. Island handed the Defendant the money, and the Defendant handed Mr. Island the drugs. Mr. Island subsequently delivered the drugs to Mr. Lee.

Mr. Lee turned over the drugs he received from Mr. Island to the TBI laboratory for analysis, and the drugs were determined to be .8 grams of cocaine. Mr. Lee also ran the tag number taken from the blue car in the carport and determined that the car belonged to Barry Martin, a cousin of the Defendant.

Thiakia Tidewell testified on behalf of the Defendant, stating that he had been with her the entire evening of October 30, 1996, beginning at about five o'clock. She explained that she remembered the date because they had spent time shopping for the Defendant's daughter's Halloween party, which was taking place the next day.

The Defendant also testified and denied making either of the drug sales. He stated that he had never met Dean Floyd before. He explained the presence of his mother's car at the house where the October 3 purchase was made as being there for repairs, as the resident of the house was a good mechanic. He further explained that he knew Sylvester Island from discussions they had had about an engine. On cross-examination, the Defendant admitted to having six prior felony convictions.

## SUFFICIENCY

The Defendant was convicted of the sale of .3 grams of cocaine and the sale of .8 grams of cocaine. He now contends that the evidence is not sufficient to support these convictions.

Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Evidence is sufficient if, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Smith, 24 S.W.3d 274, 278 (Tenn. 2000). In addition, because conviction by a trier of fact destroys the presumption of innocence and imposes a presumption of guilt, a convicted criminal defendant bears the burden of showing that the evidence was insufficient. See McBee v. State, 372 S.W.2d 173, 176 (Tenn. 1963); see also State v. Buggs, 995 S.W.2d 102, 105-06 (Tenn. 1999); State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

In its review of the evidence, an appellate court must afford the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Tuggle, 639 S.W.2d at 914; see also Smith, 24 S.W.3d at 279. The court may not "re-weigh or re-evaluate the evidence" in the record below. Evans, 838 S.W.2d at 191; see also Buggs, 995 S.W.2d at 105. Likewise, should the reviewing court find particular conflicts in the trial testimony, the court must resolve them in favor of the jury verdict or trial court judgment. See Tuggle, 639 S.W.2d at 914. All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact, not the appellate courts. See State v. Morris, 24 S.W.3d 788, 795 (Tenn. 2000); State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).

Cocaine is a Schedule II controlled substance. See Tenn. Code Ann. § 39-17-408(b)(4). Our Criminal Code provides that "[i]t is an offense for a defendant to knowingly . . . [s]ell a controlled substance." Id. § 39-17-417(a)(3). Officer Dean Floyd testified that he purchased a substance from the Defendant on October 3, 1996, during an undercover drug operation. He had "no doubt" that the person from whom he purchased the substance was the Defendant. The substance was subsequently determined to be .3 grams of cocaine. This evidence is sufficient to support the Defendant's conviction of the sale of .3 grams of cocaine, and this issue is therefore without merit.

Similarly, Sylvester Island testified that he purchased a substance from the Defendant on October 30, 1996, during an undercover drug operation. He had met the Defendant earlier in the day

and subsequently identified him from photographs obtained by Steve Lee. The substance he obtained from the Defendant was determined by laboratory testing to be .8 grams of cocaine. This evidence is sufficient to support the Defendant's conviction of the sale of .8 grams of cocaine, and this issue is therefore without merit.

## SOLICITATION OF HEARSAY

The Defendant next contends that the prosecutor solicited hearsay testimony in violation of his right to a fair trial. The prosecutor was asking questions of Mr. Lee concerning the tag number obtained from the blue car in which Mr. Island purchased cocaine from the Defendant. Mr. Lee testified that he had discovered that the owner of the car, Barry Martin, lived in Denmark, a community near Jackson. (The Defendant lived in Jackson.) Mr. Lee then stated, "At which time I contacted the Organized Crime Unit out of Jackson." Defense counsel objected, stating "I'm going to object to anything that he learned from anybody else. It's hearsay." The trial court sustained the objection.

In response to further questions by the prosecutor, to which no further objections were made, Mr. Lee testified that the investigation revealed the relationship between the Defendant and Barry Martin. Mr. Lee then testified again about contacting the Organized Crime Unit, stating "I obtained photographs from the Organized Crime Unit in Jackson. At which time Mr. Island identified [the Defendant.]" Mr. Lee then testified that he subsequently obtained the correct name of the person in the photographs, that name being Abebreellis Bond. The Defendant now claims that "[t]he solicitation of said hearsay testimony was sufficient to taint the Jury and made a fair trial to the Appellant impossible."

It appears from his brief that the Defendant's real complaint is Mr. Lee's reference to the "Organized Crime Unit" as being the source of the photographs. His reference, however, was not hearsay. See Tenn. R. Evid. 801. This issue has no merit.

## MISSING WITNESS INSTRUCTION

The Defendant next complains that the trial court erred in failing to instruct the jury about absent material witnesses. The Defendant's contention arises from the fact that the State did not call as witnesses Mr. Bobby Lever, who accompanied Officer Floyd on October 3, 1996, or Jaronda Parker, who accompanied Mr. Island on October 30, 1996. The jury instruction on absent material witnesses provides:

> When it is within the power of the state or the defendant to produce a witness who possesses peculiar knowledge concerning facts essential to that party's contentions and who is available to one side at the exclusion of the other, and the party to whom the witness is available fails to call such witness, an inference arises that the testimony of such witness would have been unfavorable to the side that should have called or produced such witness. Whether there was such a witness and whether such an inference has arisen is for you to decide and if so, you are to determine what weight it shall be given.

T.P.I.-- CRIM. 42.16.

We first note that the Defendant did not raise this issue in his motion for new trial. Accordingly, this issue is waived. See Tenn. R. App. P. 3(e). Moreover, our Rule of Criminal Procedure 30(a) provides that parties may submit written requests for special instructions to the jury. Failure to submit the special request in writing constitutes a waiver of the issue. See State v. Vickers, 985 S.W.2d 1, 8 (Tenn. Crim. App. 1997); State v. Brewer, 932 S.W.2d 1, 15 (Tenn. Crim. App. 1996).

The record before this Court contains no written request for the missing witness jury instruction.[1] Accordingly, this issue is waived. See id. Moreover, this issue has no merit. Our supreme court has held that, "[b]efore the missing witness rule can be invoked, the evidence must show that 'the witness had knowledge of material facts, that a relationship exists between the witness and the party that would naturally incline the witness to favor the party and that the missing witness was available to the process of the Court for trial.'" State v. Bigbee, 885 S.W.2d 797, 804 (Tenn. 1994) (quoting State v. Middlebrooks, 840 S.W.2d 317, 334-35 (Tenn. 1992), quoting Delk v. State, 590 S.W.2d 435, 440 (Tenn.1979)). Moreover, the "missing" witness must not have been equally available to both parties. See State v. Boyd, 867 S.W.2d 330, 337 (Tenn. Crim. App. 1992). Here, Lt. Walker testified that Bobby Lever had "disappeared" and that, despite his best efforts, had not been located. Mr. Lever was not available to the process of the trial court for trial. Accordingly, the missing witness instruction was not appropriate with respect to Mr. Lever.

With respect to Ms. Jaronda Parker, the proof established that Ms. Parker accompanied Mr. Island to the house where he met with the Defendant and purchased cocaine. However, Ms. Parker remained in Mr. Island's car and did not witness the actual drug transaction. Moreover, the prosecuting attorney stated during closing argument that Ms. Parker was under subpoena. Thus, it appears that the Defendant could have called her at trial had he so desired, and she was therefore not "available to one side at the exclusion of the other." T.P.I. -- CRIM. 42.16. The Defendant's contentions in this regard warrant him no relief.

**CHAIN OF CUSTODY**

In his fourth issue, the Defendant claims that the State did not establish the chain of custody with respect to the cocaine allegedly purchased from the Defendant. Again, this issue is waived for failure to raise it in the motion for new trial. See Tenn. R. App. P. 3(e). Moreover, it is without merit. As our supreme court has previously recognized, Tennessee Rule of Evidence 901(a) requires as a condition precedent to the introduction of tangible evidence, that a witness be able to identify the evidence or establish an unbroken chain of custody. See State v. Scott, 33 S.W.3d 746, 760 (Tenn. 2000). "The purpose of the chain of custody requirement is 'to demonstrate that there has been no tampering, loss, substitution, or mistake with respect to the evidence.'" Id. (quoting State v. Braden, 867 S.W.2d 750, 759 (Tenn.Crim.App.1993)). However, the identity of tangible evidence

---

[1]We also note that the transcript of the trial contains no record of an oral request by the defense for the missing witness instruction.

need not be proven beyond all possibility of doubt, and the State is not required to establish facts which exclude every possibility of tampering. See id. (citations omitted). "The evidence may be admitted when the circumstances surrounding the evidence reasonably establish the identity of the evidence and its integrity." Id.

In this case, with respect to the October 3 buy, Officer Floyd testified that he took the chunk of cocaine sold to him by the Defendant, sealed it in an evidence bag, and locked it in a lockbox until he delivered the evidence bag to Lt. Walker several days later. He identified at trial the bag in which he placed the drugs. Lt. Walker also identified the bag he received from Officer Floyd and testified that he kept the bag until delivering it to the laboratory two days later. Sandra Romanek with the Tennessee Bureau of Investigation laboratory identified at trial the bag she received from Lt. Walker and which she later determined to contain cocaine. She testified that the bag was in a sealed condition when she received it. She also testified that Lt. Walker picked the bag up at the lab after testing was complete. This testimony was sufficient to establish the chain of custody.

With respect to the October 30 buy, Mr. Island identified at trial the bag in which he placed the cocaine he purchased from the Defendant and on which he placed his initials, and then delivered to Mr. Lee. Mr. Lee testified that, after receiving the substance from Mr. Island after the transaction, he sealed it in another envelope and delivered it to the TBI lab. Ms. Romanek identified at trial the bag she received from Mr. Lee in a sealed condition, which she tested and determined was cocaine, and which Mr. Lee subsequently picked back up. Again, this testimony was sufficient to establish the chain of custody. This issue is without merit.

### SENTENCING

In his final issue, the Defendant complains that his sentences and fines are excessive. When an accused challenges the length, range, or manner of service of a sentence, this Court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. See Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

When conducting a de novo review of a sentence, this Court must consider: (a) the evidence, if any, received at the trial and sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement made by the defendant regarding sentencing; and (g) the potential or lack of potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210; State v. Brewer, 875 S.W.2d 298, 302 (Tenn. Crim. App. 1993); State v. Thomas, 755 S.W.2d 838, 844 (Tenn. Crim. App. 1988).

If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are

adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. See State v. Pike, 978 S.W.2d 904, 926-27 (Tenn. 1998); State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

The Defendant's October 30 sale of .8 grams of cocaine is a Class B felony. See Tenn. Code Ann. § 39-17-417(c)(1). The Defendant's October 3 sale of .3 grams of cocaine is a Class C felony. See id. § 39-17-417(c)(2). The Defendant was sentenced as a Range II offender, which classification he does not contest. The sentencing range for a Class B felony in Range II is twelve to twenty years. See id. § 40-35-112(b)(2). The sentencing range for a Class C felony in Range II is six to ten years. See id. § 40-35-112(b)(3). The presumptive sentence for Class B and Class C felonies is the minimum in the range, increased as appropriate for applicable enhancement factors, and decreased as appropriate for applicable mitigating factors. See id. § 40-35-210(c), (e).

In this case, the trial court applied only one enhancement factor: that the Defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish his Range II status. See id. § 40-35-114(2) (Supp. 2002). The trial court found no mitigating factors, and the Defendant suggested none. On the basis of the single enhancement factor, the trial court sentenced the Defendant to eighteen years on the Class B felony and to nine years on the Class C felony. The sentences were ordered to be served concurrently in the Department of Correction. The trial court further approved the $100,000 fine assessed by the jury on each conviction.

The Defendant contends on appeal that "[t]he fines should be reduced to the statutory minimum." The Defendant cites no authority for his contention,[2] and this issue is therefore waived. See Tenn. Ct. Crim. App. R. 10(b). However, because we agree with the Defendant that the fines are excessive, we will address this issue.

Our supreme court has made clear that the imposition of a fine must be based upon the factors set forth in the 1989 Sentencing Act, including the defendant's ability to pay the fine, the defendant's prior history, his or her potential for rehabilitation, relevant mitigating and enhancement factors, and the seriousness of the conviction. See State v. Taylor, 70 S.W.3d 717, 723 (Tenn. 2002). Where a substantial period of incarceration is imposed, a large punitive fine may not be necessary to achieve an appropriate overall sentence. See id.

In this case, the presentence report indicates that the Defendant's annual income from his lawn-care business provided an annual income of $22,000 to $29,000. Obviously, the Defendant was supplementing his income through drug-dealing, but the record does not provide any accounting of how much this supplemental income may have been. The Defendant has six prior felonies and was serving a sentence in Community Corrections at the time he committed the instant offenses. The Defendant admitted to years of heavy crack cocaine use.

---

[2]We note that there is no statutory minimum for fines assessed on convictions for the sale of controlled substances. See Tenn. Code Ann. § 39-17-417.

The Defendant's criminal history is significant. His potential for rehabilitation appears dim. The instant offenses are serious. Because he will be incarcerated for a significant period of time, the Defendant's ability to pay fines is reduced. We note that the trial court found the Defendant to be indigent for the purposes of this appeal. In light of all these factors, we reduce the Defendant's fines to $25,000 on each conviction.

The Defendant also contends that the trial court should have imposed the minimum sentences in Range II. We disagree. Application of the enhancement factor for previous criminal history or behavior was appropriate in this case. The Defendant has six prior felony convictions. He had numerous additional misdemeanor convictions. He admitted to heavy cocaine use for seven years. The weight to be given applicable enhancement factors is left to the sound discretion of the trial judge so long as the trial court complies with the purposes and principles of the 1989 Sentencing Act and the record supports its findings. See State v. Alder, 71 S.W.3d 299, 306 (Tenn. Crim. App. 2001). Here, the trial court specifically stated that it was giving significant weight to this enhancement factor due to the Defendant's prior history. We find no error by the trial court in this regard. Additionally, we note that the presentence report indicates that the Defendant was serving a Community Corrections sentence when he committed the instant offenses. The Defendant's sentences for these convictions were therefore also subject to enhancement on this basis. See Tenn. Code Ann. § 40-35-114(14)(E) (Supp. 2002).

Finally, the Defendant contends that the trial court should have imposed an alternative sentence rather than incarceration. Initially, we note that the Defendant is not eligible for probation. See Tenn. Code Ann. § 40-35-303(a). Furthermore, the presentence report indicates that the Defendant was serving a Community Corrections sentence when he committed the instant offenses; clearly, Community Corrections is not appropriate for this Defendant. The trial court determined that, based on the Defendant's criminal history, an alternative sentence was not appropriate for the Defendant. We agree. This issue is without merit.

The Defendant's fines are each reduced from $100,000 to $25,000. In all other respects, we affirm the judgments of the trial court.

_____
DAVID H. WELLES, JUDGE